**In re Charles Guy WELLEN, Jr., Randi Sue Wellen, Debtors.**

**The FIRST NATIONAL BANK OF TOMS RIVER, N.J., A National Banking Institution, Plaintiff,**

**v.**

**Charles Guy WELLEN and Randi Sue Wellen, Defendants.**

**Bankruptcy No. B87–01509–Y.**

United States Bankruptcy Court, N.D. Ohio.

Jan. 12, 1989.

Charles Guy Wellen, Jr., Toms River, N.J., pro se.

Randi Sue Wellen, Kinsman, Ohio, pro se.

Anthony Palazzo, Toms River, N.J., Mark A. Beatrice, Youngstown, Ohio, for plaintiff.

Conrad Morgenstern, U.S. Trustee, Cleveland, Ohio.

WILLIAM T. BODOH, Bankruptcy Judge.

This cause came before the Court on the adversary complaint, filed by THE FIRST NATIONAL BANK OF TOMS RIVER, N.J. ("FNB"), which asks the Court to find an obligation owing to it by Debtors to be nondischargeable pursuant to 11 U.S.C. Sec. 523(a)(2)(A). This is a core proceeding pursuant to 28 U.S.C. Sec. 157.

In or about October 1985, the Debtors applied for the reissue of a VISA credit card from FIRST NATIONAL. Mrs. Wellen had been issued the card prior to their marriage. At the time of the application, Mr. Wellen was employed by the United

States Navy and Mrs. Wellen was unemployed. Cards were subsequently issued to them which enabled them to use the automatic teller machines (ATM) for cash advances. The Debtors had a credit limit of One Thousand, Eight Hundred & 00/100 Dollars ($1,800.00) in use of the VISA card. The monthly statements during 1987 reveal the following activity on their VISA account: [1]

| MONTH | NUMBER OF TRANS- ACTIONS | CASH ADVANCES | BALANCE |
|---|---|---|---|
| March | 0 | 0 | $1,832.39 |
| April | 0 | 0 | 1,794.17 |
| May | 0 | 0 | 1,760.50 |
| June | 1 | $100.00 | 1,827.03 |
| July | 1 | 50.00 | 1,847.01 |
| August | 20 | 5,100.00 | 6,918.93 |
| September | 8 | 2,400.00 | 9,430.64 |
| October | 0 | 0 | 9,552.36 |
| November | 0 | 0 | 9,674.08. |

In May 1987, while the Wellens were residing in Ohio, Mr. Wellen contacted an Ohio attorney regarding filing a petition in bankruptcy. On or about July 4, 1987, Mrs. Wellen returned to New Jersey and returned to Ohio in August 1987. On August 21, 1987, BANK ONE OF EASTERN OHIO, N.A. ("BANK ONE"), confiscated the VISA card of Mrs. Wellen when a woman attempted to use it in Warren, Ohio.[2] On August 27, 1987, Mr. and Mrs. Wellen both signed documents with an attorney indicating their intent to file a joint petition in bankruptcy. It appears that Mr. Wellen may have surrendered his card to the attorney at this time. On November 20, 1987, the Debtors filed a petition for relief under Chapter 7 of Title 11 of the United States Code. FNB filed the instant adversary proceeding on February 22, 1988. A hearing was held on December 12, 1988.

In order to except an obligation from discharge pursuant to 11 U.S.C. Sec. 523(a)(2)(A), a creditor must prove:

(1) the debtor made certain representations in the process of obtaining property or refinancing;

(2) the debtor either knew the representations were false or the representations were made with gross recklessness as to their truth;

(3) debtor intended to deceive the creditor;

(4) creditor reasonably relied on the false representations;

(5) creditor's loss was the result of the misrepresentation.

*See In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986).

In a previous decision, this Court adopted the "implied representation" theory relating to credit card purchases. *In re Chech,* 96 B.R. 781, 783 (Bankr.N.D.Ohio 1988). That theory holds that "credit card purchases include an implied representation that the cardholder has the ability and intention to pay for the charge incurred." *Id.* Thus, the only question remaining regarding the first element is whether the Debtors received the cash advances attributed to them. Bank records indicate that between July 1, 1987, and August 4, 1987, more than Seven Thousand, Five Hundred & 00/100 Dollars ($7,500.00) was withdrawn in the form of cash advances from ATM machines on the Debtors' account. Mrs. Wellen testified that she did not make any withdrawals from the account when she returned to New Jersey in July, 1987. Based upon our observation of her as a witness and consideration of other evidence, the Court does not credit Mrs. Wellen's testimony.[3] First of all, the location of the withdrawals corresponds precisely with Mrs. Wellen's whereabouts at those times. On July 1, 1987, Three Hundred & 00/100 Dollars ($300.00) was withdrawn from McDowell

---

**1.** All activity on the account was in the form of cash advances. It is also helpful to note that there is approximately a one-month lag between the time the cash advance is received and the time it is reported on a monthly statement. Thus, for example, cash advances appearing on the August statement were received primarily during the month of July.

**2.** The evidence in this proceeding supports the Court's conclusion that this person was either Mrs. Wellen or someone known to her.

**3.** While there is a strong suspicion that Mrs. Wellen may have committed perjury, there is not sufficient evidence to recommend her prosecution to the United States Attorney's office.

National Bank, one of whose branches is near Kinsman, Ohio where both Mr. and Mrs. Wellen were residing at the time. On or about July 4, 1987, Mrs. Wellen returned to an area of New Jersey where all subsequent withdrawals were made. Ms. Adrian Sanchez, Assistant Cashier for FNB, testified that in order to effectuate a withdrawal, it is necessary to have both the card and a cardholder's personal identification number ("PIN"). Mrs. Wellen testified that she made up this number from the first few numbers of her Social Security number. Whoever withdrew the funds must have had possession of a card and known the PIN. There is insufficient evidence that anyone other than Mrs. Wellen was responsible for the withdrawals.[4] Furthermore, the video tape made at the Seaside Park branch of FNB on July 24, 1987, (Plaintiff's Exhibit M) during an ATM withdrawal with Wellen's card and PIN shows a woman whom the Court believes to have been Mrs. Wellen. Finally, it appears that the same woman tried to use the VISA card at Bank One on August 21, 1987, when Mrs. Wellen's card was confiscated. The Court believes Mrs. Wellen was involved in all these transactions. As a consequence, we find the first element is met.

The second and third elements require that the Debtors either knew the representations were false or acted with gross recklessness as to their truth in an attempt to deceive the creditor. Over the course of two months, it appears that Mrs. Wellen effected twenty-eight (28) withdrawals amounting to over Seven Thousand, Five Hundred & 00/100 Dollars ($7,500.00). There is nothing to suggest that Mrs. Wellen could have reasonably believed that either she or her husband would be able to repay these advances. Indeed, the withdrawals may have been effectuated in contemplation of bankruptcy, given Mr. Wellen's consultation with an attorney concerning bankruptcy in May, 1987. The Court concludes that Mrs. Wellen falsely implied an ability to repay the withdrawals. The magnitude of her withdrawals suggests a conscious intent to deceive FNB. We find the second and third elements are also met.

The fourth element questions whether FNB reasonably relied on the Debtors' false representations. Normally, FNB would have difficulty satisfying this requirement as it failed to take reasonable steps to stop further cash withdrawals after the approved credit limit had been exceeded. However, Ms. Sanchez adequately explained problems in the transmittal of data between the credit card processor and the ATM processor which were responsible for FNB's inability to terminate the Debtors' cash withdrawal privileges. In addition, there is nothing in the prior history of the account to suggest that FNB was unreasonable in relying on the Debtors' misrepresentations. Therefore, we find the fourth element to be met.

The last element requires that the creditor's loss be caused by the Debtors' misrepresentations. There is little question that FNB would not have sustained a loss if the Debtors had not continuously implied their intent and ability to repay the charges incurred on their credit card.

The Plaintiff's Objection will be sustained, and the Debtors' obligation to the Plaintiff is found to be nondischargeable.

This shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

An appropriate Order shall issue.

---

4. Although Mrs. Wellen made some vague references to a friend who could have used her card, no specific facts were revealed which would lend credence to her theory. Mrs. Wellen did not provide the friend's name, how the friend obtained her PIN, nor specific times to support such a vague claim.